IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHERYL L. LEWIS, ) | |
| ) | |
| Plaintiff ) | Civil No. 05-743-TC |
| ) | |
| v. ) | OPINION AND |
| ) | ORDER |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

TIM WILBORN
Wilborn & Associates
2020-C SW 8th Avene
West Linn, OR 97068

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

LEISA A. WOLF
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

COFFIN, Magistrate Judge:

Plaintiff Cheryl Lewis seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383). The Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Born in 1945, Lewis completed high school and in 2001 completed a vocational course in medical billing. Tr. 70. Between 1986 and 2001 Lewis worked as an assembly manager, office specialist, support services supervisor and administrative assistant. Tr. 65.[1]

Lewis states she was first bothered by major depression, fibromyalgia and migraine headaches between 1995 and 2000. Tr. 64. Lewis initially alleged disability and inability to work because of these impairments since May 10, 2001; she later she suggested had been unable to work since April 19, 2000. Tr. 54, 64. Lewis filed an application for DIB September 16, 2001, relying upon May 10, 2001 as her onset date. Tr. 56. This application was denied and the Commissioner's decision became final on April 29, 2005. Tr. 7.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 107 U.S. 2287, 2291 (1987). Lewis challenges the ALJ's evaluation of the evidence and

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer filed September 26, 2005 (Docket #5).

2 - OPINION AND ORDER

his conclusions at step four.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*, 107 U.S. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. 404.1520(a)(4)(v).

The initial burden of establishing functional limitations rests upon the claimant. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's residual functional capacity. *Yuckert*, 107 U.S. at 2291; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Lewis "generally credible to the extent she does have medically determinable impairments," but "not to the extent she is completely disabled." Tr. 24. These medically determinable impairments included degenerative disc disease of the cervical and lumbar spine, migraines, and a history of fibromyalgia. Tr. 23. The ALJ assessed Lewis' RFC:

> I find the claimant retains the exertional residual functional capacity
> to lift twenty pounds occasionally and ten pounds frequently.  She
> can stand and/or walk for about six hours in an eight hour workday

>and is able to sit for about six hours in an eight hour workday. She should never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs. She can occasionally crawl and can frequently balance, stoop, kneel and crouch. She can only occasionally reach overhead bilaterally with the upper extremities.

Tr. 25.

At step four, the ALJ found that Lewis' RFC did not preclude returning to her previous work as an administrative assistant. Tr. 26. Accordingly, the ALJ determined that Lewis was not disabled under the Act at any time through the date of his decision. Tr. 26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Lewis contends the ALJ failed to reach an accurate RFC assessment because he improperly assessed her credibility, improperly rejected her testimony, improperly addressed medical evidence and failed in his duty to develop the record.

4 - OPINION AND ORDER

## 1. Lewis' Credibility

### a. Credibility Analysis

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

### b. Medical Evidence Supporting the ALJ's Credibility Determination

The objective medical evidence does not support the degree of impairment Lewis alleges. Lewis has a extensive documented history of migraine and transformed (rebound or drug-induced) migraine headaches, beginning in 1999. Tr. 113, 144, 154, 294, 304, 329. She has a clinical diagnosis of fibromyalgia, apparently in remission with pain medication. Tr. 222. Lewis also has a clinical history of depression, in partial remission with treatment. Tr. 138-9, 199, 200, 202.

Lewis additionally reports a diagnosis of lupus and a separated pelvis. Tr. 93, 106, 227, 228, 230. The lupus diagnosis was explicitly denied by her treating physician, Dr. Woods, and is not substantiated at any point in the record. Tr. 302. X-rays of her pelvis revealed normal imaging, and at least one examiner insinuated such an injury was unlikely. Tr. 227, 353, 337.

Lewis' presentation of her medical history regarding the severity of her complaints is inconsistent. She testified her headaches required up to "seven, eight" days of bedrest, but never reported this to a medical practitioner. Tr. 404. She suggested her fibromyalgia precluded most activities of daily living, but responded positively to only three or four out of eighteen trigger points. Tr. 88-90, 93-4, 222. An evaluating psychologist found that her reported depressive and cognitive symptoms were not corroborated by external testing. Tr.244. The ALJ may appropriately consider such inconsistencies in his credibility finding. *Smolen*, 80 F.3d at 1284.

### c. Other Credibility Considerations

Between August 2000 and September 2001 a psychiatrist, Dr. Lennox, treated Lewis for depression. During this period he produced detailed clinical notes, charting Lewis' reported history and improvement. Tr. 195-212. Lewis initially claimed the therapy was helpful, but in December 2004 Lewis submitted a letter to her attorney claiming her reporting to Lennox was facetious and largely invented. Tr. 135, 361.

Notably, Lewis completed a training course in medical billing in July, 2001, after her alleged onset date. Tr. 70, 204. Such activities may be construed as effort equal to that of employment. *See Orteza*, 50 F.3d at 750. The ALJ also considered that Lewis made contradictory statements regarding her job and spoke of retirement plans in the context of leaving her job. Such statements are not necessarily inconsistent with an application for benefits. However, this court is required to uphold the ALJ's credibility finding if it is based upon a rational interpretation of the evidence. *Magallanes*, 881 F.2d at 750.

The ALJ's findings regarding Lewis' credibility and her alleged inability to work in relation to her impairments are sufficiently specific to permit this court to conclude they are not

6 - OPINION AND ORDER

arbitrary. *See Batson*, 359 F.3d at 1193. The record supports Lewis' headache reports, but not the degree of impairment Lewis alleges. In citing Lewis' contradictory statements and unsupported medical reports, the ALJ correctly gave specific and clear and convincing reasons for rejecting Lewis' testimony regarding the severity of her impairment. *Magallanes*, 881 F.2d at 755; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283.

## 2. Medical Source Statements

The medical record begins in 1999 and continues through May 2004. Lewis' present claim concerns the period beginning May 10, 2001. Lewis suggests the ALJ improperly addressed the opinions of treating physicians Drs. Sims, Rex and Lennox and examining physician Dr. Nelson.

### a. Physical Impairments

Lewis' record consistently indicates headaches. Tr. 113, 144, 154, 294, 304, 329. These headaches have been attributed to, variously, migraines, depression, stress, and temporomandibular joint (TMJ) dysfunction. Tr. 167, 317-320, 327. Lewis takes both prophylactic and abortive medications. Tr. 396-7. In 2004 treating physicians suggested that her headaches are "transformed" headaches, caused in part by rebound effects from painkilling medications. Tr. 326.

In December 2000, Lewis' treating physician, Dr. Sims, explicitly stated that Lewis' recurring headaches did not prevent her from working. Tr. 167. Contrary to Lewis' submissions, Sims did not continually support her alleged disability. In December, 2000, Sims wrote, "I feel this is a psychiatric problem for which I sent her to Dr. Lennox. I do not feel it appropriate, nor do I have any type of authority, to take her off work because of the headache." Tr. 167. On the

7 - OPINION AND ORDER

same date, Sims added, "I spoke on the phone with Dr. Lennox. He supports my opinion that we should encourage Cheryl as much as we can and if she feels it appropriate she herself should make an application for disability." Tr. 167. Sims' statements do not suggest significant work restriction. "Encouraging" Lewis apparently would indicate therapeutic encouragement, rather than encouragement in seeking disability.

Generally, a treating physician's opinion is given controlling or substantive weight. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In the case of conflicting medical opinions, the ALJ is responsible for evaluating and resolving evidentiary conflicts. *Batson*, 359 F. 3d at 1195. The ALJ appropriately accorded significant weight to Sims' opinion regarding Lewis' proposed work restrictions.

Lewis submits that her subsequent physician, Dr. Rex, "took her off work" in May, 2001. (Plaintiff's Reply Brief, 5). She also told subsequent physicians that she was directed to stop working by her physician in April 2001. Tr. 326. In August 2001 Rex provided Lewis with a brief note supporting her disability claim, but there is no evidence that Rex directed Lewis to cease working. Furthermore, Rex's treatment begins in January 2001, well after Lewis ceased working in May 2000. Rex's note reads, "This patient has been disabled since last working full time March, 2000 and has progressed with therapy towards potential return to work in 6-12 months (or longer) due to migraines/ fibromyalgia/ other mental problems." Tr. 185. Rex's treatment notes for May 2001 reflect clearance for travel to New York City, with no reference to a work restriction prior to Rex's August 2001 note. Tr. 284.

Rex became Lewis' treating physician in January 2001. His note therefore reflects a disability period longer than his relationship with Lewis and in direct contradiction to both earlier

8 - OPINION AND ORDER

and subsequent treating physicians. Notably, Rex withdrew his disability endorsement regarding Lewis' state disability claim in mid-2000.[2] Tr. 320, 322, 325.

The ALJ erred in finding Rex's opinion unsupported by clinical notes as the file contains Rex's clinical notes for the period between January and December 2001. Tr. 25, Tr. 278-293. However, these notes primarily focused upon vitamin and drug therapies and never referenced Lewis' alleged depression. Tr. 273-293. These notes do not give explanatory findings for Rex's disability note and initial visits do not reference disability. Tr. 285-293. In August 2001 Rex noted a "preexisting" disability, but does not indicate that Rex diagnosed a precursory condition or instigated this status. Tr. 282. The ALJ may discredit a treating physician's opinion if it is "conclusory, brief, or unsupported by the record as a whole or by objective medical findings." *Batson*, 359 F.3d at 1195, *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In April 2002 Lewis' treating physician, Dr. Woods, twice explicitly declined to find Lewis disabled. Tr. 255, 320. In March 2002 a non-physician headache specialist, Eric Schuman, P.A, fulfilled Lewis' "emergency" request for completion of a PERS disability form, clearly stating that he is an evaluating source only. Tr. 253. Schumann is not an acceptable medical source. 20 C.F.R. § 404.1513. Schuman's supervising neurologist, Dr. Clark, concurred with Schumann's opinion. Tr. 312. While it is reasonable to accept that Clark assumed responsibility for Schuman's diagnosis, Clark's affirmation does not carry more weight than Lewis' contemporary treating physician, Dr. Woods, who declined to find Lewis disabled. *See Edlund*, 253 F.3d at 1157; *see also Magallanes*, 881 F.3d at 751.

---

[2]By Lewis' report, Rex's retraction lead to the state disability agency reversing their disability finding and ordering Lewis to repay $3500 for disbursed benefits. Tr. 322.

9 - OPINION AND ORDER

Lewis also asserts that the ALJ improperly rejected the January 2002 opinion of examining physician Dr. Nelson. The ALJ did not reject Dr. Nelson's findings. The ALJ specifically cited Nelson's evaluation regarding Lewis' abilities to lift, climb, crawl, crouch, kneel and stoop. Tr. 22. The ALJ is not obligated to exhaustively recite each finding a physician articulates. *Howard v. Apfel*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Regardless, Nelson's report does not support Lewis' assertion that she is precluded from working. Based upon his functional evaluation, Nelson found that Lewis could work a full day, writing, "standing and moving about were projected at three hours a day. Sitting: about four hours a day, although it is my opinion that objectively, she could get through an eight hour day sitting and standing alternatively to relieve pain or discomfort." Tr. 222. Contrary to Lewis' submission, an option to sit or stand does not preclude competitive employment. Lewis relies upon Social Security Ruling (SSR) 83-12p, which suggests that individuals limited to sedentary or light employment requiring an option to sit and stand may have difficulty making adjustment to other work. SSR 83-12 *4. The ruling also states that some jobs in the national economy offer a degree of choice in sitting and standing, and if an individual previously had such a job and is still capable of performing it, he or she should not be found disabled. A vocational expert should be consulted in ambiguous cases. *Id.* Drawing upon the VE's testimony, as suggested by the ruling, the ALJ appropriately found Lewis still able to perform her past relevant work.

While Lewis' reports of headaches are consistent, they are not supported by evidence of a stroke, as she repeatedly suggests. Tr. 196, 328, 351, 353- 4, 360, 392. Imaging studies twice found no evidence of a stroke. Tr. 333, 334. No medical provider explicitly suggested she cease working due to her headaches, and the medical evidence does not support the degree of

impairment Lewis reports.

In January 2000, Lewis reported she had been headache free for at least one month. Tr. 161. Between October 2000 and April 2003, Lewis' Kaiser Permanente records show that her headaches improved. In August 2002 the records quote Lewis saying "For the first time in 30 years I'm feeling better. I'm having [headaches] once weekly for two days." Tr. 309. In October 2002, Lewis told Nelson that psychological factors, rather than her headaches, limited her ability to work. Tr. 221. Medical notes in 2004 do not mention any headache impairment, suggesting Lewis' pain remained in remission. Tr. 335-6. Because the ALJ appropriately questioned Lewis' credibility regarding the degree of her impairments and their impact on her ability to work, the ALJ is not required to credit Lewis' excess pain testimony regarding her headaches. *See Magallanes*, 881 F.3d at 755.

**b. Mental Impairments**

Lewis suggests her depressive disorder and associated stress precludes all work. This opinion is not supported by treating and evaluating psychiatrists and psychologists.

Lewis' mental health practitioners in fact encouraged her to return to work, believing this would facilitate her recovery. Tr. 201. In assessing Lewis for disability, treating psychiatrist Lennox concurred with Sims, noted above, writing:

> [Lewis] is very hopeful to get some sort of disability. At this point I do not see her as a psychiatrically disabled person. She shows no signs of cognitive impairment or dementia. I don't see chemical dependency or significant psychosis [or] any kind of mood instability, other than chronic depression around general life dissatisfaction with her previous job and marital problems.

Tr. 205.

11 - OPINION AND ORDER

This entry reflects Lewis' last visit with Lennox. Lewis dismissed advice that she seek mental health treatment, at times ceasing or refusing mental health treatment against practitioner's advice. Tr. 156, 300, 307, 347. Failure to seek treatment for an alleged impairment, if not precluded by financial circumstance, is an adequate reason to question a disability claim. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

In October 2000, an evaluating psychiatrist, Dr. Heck, concurred with Lennox, noting that Lewis' depressive disorder appeared to be in remission and did not preclude substantive functioning. Tr. 139, 141. Heck diagnosed depression in partial remission and a somatization disorder. Heck conducted this evaluation via clinical testing, which suggested a valid result profile. Tr. 138. In early 2004 Lewis briefly attended counseling with a licensed clinical social worker, Jan Elliott, who noted that Lewis appeared "moderately," but not substantially, depressed. Tr. 346. Lewis ceased this treatment against advice. Tr. 347.

The record specifically indicates that Lewis had a depressive disorder, in partial remission, a somatization disorder and a possible personality disorder. Tr. 138, 139, 199, 200, 202. The record does not reflect the significant decompensation Lewis alleges due to depression. Tr. The ALJ appropriately noted this in his decision. Tr. 23. *See Smollen*, 80 F.3d at 1284, *Magallanes*, 881 F.3d at 755.

### 3. Duty to Develop the Record

Lewis finally claims that the ALJ failed in his duty to develop the record because he did not solicit medical source statements containing detailed RFC assessments from each of Lewis' medical sources under 20 C.F.R.§ 404.1513(b)(6). However, such regulation concludes, "the

lack of the medical source statement will not make the report incomplete." 20 C.F.R.§ 404.1513(b)(6).

The record contains medical records and statements from each of Lewis' treating physicians, including Drs. Sims, Lennox, Woods and Rex. Tr. 141-171, 195-213, 296-304, 278-293. Examining sources Drs. Nelson, Heck and Soltzfus are also included. Tr. 115-143, 220-226, 227-231.

The burden of showing disability is on the claimant. *Manuel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This includes the burden of providing a complete record. 20 C.F.R. §§ 404.704, 404.1512. It is reasonable to require the claimant to provide a complete record because she is in a better position to provide information about her medical condition and to identify relevant sources. *Yuckert*, 107 U.S. at 2294. The ALJ is responsible for addressing evidentiary conflicts and his duty to further develop the record is triggered when ambiguities arise. *Batson*, 359 F.3d at 1195, *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2002). The ALJ adequately addressed the evidence, resolving alleged discrepancies between Sims, Nelson, Heck and Lennox in his decision. Tr. 22, 24-25. Although the ALJ erred in claiming Rex's report is unsupported by any medical evidence, this error is harmless as Rex's treatment notes do not support the disability Rex suggests. *See Batson*, 359 F.3d at 1195

Read as a whole, the medical record affirms the ALJ's finding that Lewis is not entirely credible, that her reports of fatigue and pain are exaggerated, and that the effects of both on Lewis' ability to work are unsubstantiated.

The forgoing discussion shows that Lewis failed to show substantive error in the RFC assessment. The record is adequately developed and the ALJ appropriately included all

limitations identified in Lewis' RFC assessment in his hypothetical questions to the vocational expert.

## CONCLUSION

The Commissioner's decision that Lewis did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. I recommend the Commissioner's decision be affirmed and the case dismissed.

.

DATED this 22 day of May, 2006.

_____
Thomas M. Coffin
United States Magistrate Judge